UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| KELSEY PUMEL,<br><br>    Plaintiff,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A., and SAVANNA POLLARD,<br><br>    Defendants, | Civil Action No. 2:25-cv-13732-BHH<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs Kelsey Pumel ("Plaintiff"), by and through their undersigned counsel, hereby brings the following Complaint against Defendants JPMorgan Chase Bank, N.A. ("JPMorgan") and Savanna Pollard ("Pollard"), and states as follows:

### INTRODUCTION

1. This action arises from acts by Savanna Pollard, as an assistant branch manager for JPMorgan, accessed Plaintiff's JPMorgan bank accounts, which contained sensitive and confidential financial information of Plaintiff's, and published said information to others, who then published said information on the internet and used the information to falsely accuse Plaintiff of fraudulent activity.

2. Pollard repeatedly committed these actions during her working hours at JPMorgan, using JPMorgan's systems, computers, and office space.

3. Upon information and belief, Pollard accessed Plaintiff's accounts on several occasions and retrieved confidential financial information spanning as far back as 2022. Pollard's frequent accessing of Plaintiffs' accounts establishes a continuous,

1

systematic, and repeated pattern wherein JPMorgan knew or should have known of Pollard's activities.

4. JPMorgan failed to train Pollard, and/or, should not have hired or retained Pollard as its assistant branch manager, and such an invasion of Plaintiff's privacy could have been mitigated and/or stopped entirely had JPMorgan properly supervised its employee.

5. Defendant JPMorgan was either on actual or constructive notice of Pollard's actions as Pollard access Plaintiff's accounts during working hours, at a JPMorgan branch/bank, and by using JPMorgan's network and systems.

6. Similar occurrences of invasion of privacy regarding JPMorgan financial accounts being improperly accessed and JPMorgan customers having their confidential financial information disseminated have been reported nationwide prior to this incident, evidencing actual and constructive knowledge of these actions by JPMorgan and its employees.

7. Defendant JPMorgan was negligent in its supervision, hiring, and retention of Pollard, and its failure to safeguard Plaintiffs' Nonpublic Personal Information ("NPI") is in violation of the Graham Leach Bliley Act ("GLB Act").

8. Defendant Pollard's conduct intentionally inflicted emotional distress upon Plaintiffs, was an invasion of Plaintiffs' privacy, and published defamatory comments using the pirated information.

## PARTIES

9. Kelsey Pumel is a resident of Berkeley County, South Carolina.

10. Upon information and belief, Defendant Pollard is a resident of Newcastle, Delaware.

11. Defendant JPMorgan Chase Bank, N.A., is incorporated in Delaware but is headquartered in New York, NY.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendant JPMorgan because JPMorgan has systematic and continuous contacts with the State of South Carolina by its branches/bank locations throughout the State of South Carolina.

13. This Court has personal jurisdiction over Defendant Pollard because Pollard committed an act that was intended to harm Plaintiff, a resident of Berkely County, South Carolina and it was intended that the harm would be experienced by Plaintiff in South Carolina.

14. This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and § 1367 because the parties to this action are diverse and the amount in controversy exceeds $75,000 and the Court has supplemental jurisdiction over Plaintiff's related claims.

15. Venue in this Court is proper under 28 U.S.C. § 1331(b)(2) (2) because a substantial part of the events or omissions giving rise to the claim occurred in South Carolina. Additionally, Venue is proper under Local Civil Rule 3.01(A) because Plaintiff resides within this District and Division, and a substantial part of the events giving rise to the claims occurred in this District and division.

3

**STANDING**

16. Plaintiff has standing to bring this action as an individual because she has suffered an injury in fact due to Defendants' conduct, and the injury suffered by Plaintiff is concrete, particularized, and actual.

17. Plaintiff is a social media content creator and personality, and Plaintiff's primary form of income is through content creation and her online social media presence.

18. There is a causal connection between Defendants' conduct and Plaintiff's injury.

19. A favorable decision by this Court will redress Plaintiffs' injury.

**FACTS**

20. On or about August 23, 2025, Plaintiff's bank information was posted by users on the social media site TikTok. These TikTok posts included screenshots of a check Plaintiff wrote the IRS in April, 2024 ("the check"). See, Ex. A; TikTok Post about IRS check.

21. Confidential financial information from Plaintiff's bank accounts was disclosed to other social media users, who then utilized that information to publish false narratives on social media that Plaintiff was committing fraudulent acts.

22. On or about August 24, 2025, one specific social media user, Ms. Joseph, had posted a photo Pollard took of one of Plaintiff's payment checks to the IRS on social media and later took her post down, due to realizing how the posting violated Plaintiff's rights.

23. Ms. Joseph reached out to Plaintiff via TikTok to apologize and expressed that Joseph had made a mistake in posting Plaintiff's personal and confidential banking information.

24. Ms. Joseph informed Plaintiff that on or about October 2024, a Delaware woman named Savanna Pollard, contacted a user on TikTok by the name of Kendra James, claiming that Pollard worked at Plaintiff's bank (JP Morgan Chase) and could access all of Plaintiff's accounts. See, Ex. B; Message by Savanna Pollard.

25. Pollard allegedly told Ms. James, who was a social media influencer herself and an adversary of Plaintiff, that Pollard was going into Plaintiff's JPMorgan bank records and disclosing/disseminating Plaintiff's confidential financial information such as account numbers, account balances, written checks, Plaintiff's taxes, and other confidential financial information obtained from Plaintiff's various JPMorgan accounts.

26. In order to verify Ms. Joseph's claims to Plaintiff that Savanna Pollard was the source of Plaintiff's personal banking information, Ms. Joseph sent Plaintiff a screenshot of the check Plaintiff had written to the IRS; the same exact photo of the check that was taken by Savanna Pollard at her desk at JPMorgan and that had been posted to TikTok.

27. Upon information and belief, Pollard had provided the photo of Plaintiff's check to Ms. James in October of 2024, who in turn provided the photo of Plaintiff's check to Ms. Joseph.

28. Ms. Joseph then produced to Plaintiff several screenshots of text messages between Pollard and Ms. James. See, Ex. C; Screenshots between Pollard and James.

5

29. Pollard made several libelous statements about Plaintiff to Ms. James, such as: "They constantly are transferring money from one account to the next. They're hiding shit", "I'm telling you- something's not right with the $$ either.", and "Between me & you… their accounts are being looked at. There are notes all over their profiles about the $$ movement. Banks are smarter than they are So is the IRS." Upon information and belief, other defamatory and libelous statements and publications were made by Pollard. <u>See</u>, Ex. C.

30. These publications, both alone and in context with each other assert and/or imply that Plaintiff committed financial fraud and/or tax evasion and/or other financial crimes.

31. Ms. James then shared these text communications with other TikTok influencers, one of which was Ms. Joseph. Plaintiff is aware of several TikTok influencers who received these communications, but upon information and belief, several other TikTok users were given these text communications divulging Plaintiff's confidential financial information. <u>See</u>, Ex. D; Screenshots of Savanna and Ms. James' conversations in group chat.

32. These defamatory statements Pollard made to Ms. James and other social media influencers implied that Plaintiff was committing tax fraud and/or other financial crimes and are wholly false.

33. On or about June of 2025, Ms. James then took to social media and stated she had access to Plaintiff's bank records.

34. Upon information and belief, Ms. James had asked Pollard to continue looking into Plaintiff's Chase accounts, which Pollard did repeatedly and on multiple occasions.

35. On or about August 27, 2025, another user accessed and misappropriated Plaintiff's financial information, by going through screenshots of text chats between Ms. James and Savanna Pollard, wherein Pollard was exposing Plaintiff's financial records as far back as 2022. See, Ex. E; Pollard personal bank info Screenshot.

36. Pollard's systematic and continuous access of Plaintiff's financial information, going as far back as 2022, shows a pattern of Pollard improperly using her position as a JPMorgan bank manager to access Plaintiff's accounts in order to publish private financial information to third parties.

37. Pollard's conduct was open and apparent and should have been observed by JPMorgan, as the photos Pollard is sharing are being taken straight from Pollard's desk at JPMorgan. See, Ex. A.

38. Upon information and belief, JPMorgan's security cameras, data protection systems, and other managers knew or should have known of the continuous and systematic instances that Defendant Pollard accessed Plaintiff's financial records without legitimate purpose or cause.

39. JPMorgan knew or should have known of Pollard's conduct due to the frequency of Pollard improperly accessing the JPMorgan accounts of Plaintiff, when Pollard has never met Plaintiff and in no way conducts business with Plaintiff that would warrant Pollard accessing Plaintiff's financial information.

## FOR A FIRST CAUSE OF ACTION
### Invasion of Privacy
### (Defendant Pollard only)

40. Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

41. That the Defendant has wrongfully invaded the privacy and violated Plaintiff's privacy rights, causing her injuries and damages.

42. That the Plaintiff had a reasonable expectation of privacy with respect to her financial information and other NPI

43. That Defendant owed Plaintiff a duty not to invade Plaintiff's privacy.

44. Defendant breached that duty by publicly posting the checks, tax payments, and other personal financial information on social media sites and group messages

45. The breach of Plaintiff's right to privacy has proximately caused actual and consequential damages to be determined by the trier of fact.

46. Plaintiff is entitled to an award of actual, consequential, and punitive damages against the Defendants.

## FOR A SECOND CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Defendant Pollard only)

47. Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

48. That Defendant's conduct of publishing Plaintiff's financial information and other NPI on the internet was done intentionally, and said conduct was certain, or substantially certain, that distress would result from Defendant's conduct.

49. That the conduct of Defendant was extreme and outrageous.

50. That Defendant's actions caused Plaintiff's emotional distress and the distress was of such severity that no reasonable man could be expected to endure it.

51. That Defendant's conduct of publishing Plaintiff's financial information have proximately caused damages to the Plaintiff, causing injury to her character and reputation, anxiety, stress, and mental distress.

52. Plaintiff is entitled to an award of actual, consequential, and punitive damages against the Defendants

### FOR A THIRD CAUSE OF ACTION
### Defamation
### (Defendant Pollard only)

53. Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

54. That the Defendant made false statements of fact to others by stating that Plaintiff committed tax fraud and/or other financial crimes. That was then repeated to users on Tik-Tok, Plaintiff's primary social media platform and form of income.

55. Defendant clearly and falsely published to third-parties about Plaintiff that: "They constantly are transferring money from one account to the next. They're hiding shit", "I'm telling you- something's not right with the $$ either.", and "Between me & you… their accounts are being looked at. There are notes all over their profiles about the $$ movement. Banks are smarter than they are So is the IRS." Upon information and belief, additional defamatory statements were made that will be discovered through litigation.

56. That the Defendant's false statements are false, actionable per se, and defamatory per se.

57. Defendant has not acted under the auspices or protections of any privileges, qualified, absolute, or otherwise, and did not publish these defamatory statements about a matter of public concern.

58. Upon information and belief, the Defendant's false statements were made with actual malice and in reckless disregard of the truth.

59. That the Defendant's false statements are per se defamatory.

60. Defendant's libelous and defamatory statements have caused Plaintiff to suffer mental distress and injury to their reputation which has caused Plaintiff to incur a financial loss.

61. Defendant's false and defamatory publications have proximately caused damage to the Plaintiff, causing damage to her reputation and character, and has caused Plaintiff to suffer humiliation, mental distress, and anxiety.

62. Upon information and belief, Defendant acted with knowledge that the above-mentioned defamatory statements concerning the Plaintiff were false or has published the above statements with reckless disregard of whether they were false or not.

63. Plaintiff is entitled to an award of general presumed damages, actual and consequential damages, and punitive damages.

### FOR A FOURTH CAUSE OF ACTION
### Negligent Supervision/Training/Retention
### (Defendant JPMorgan only)

64. Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

65.   Defendant owed a duty to Plaintiff to safeguard Plaintiff's confidential financial information and/or to develop sufficient policies and procedures to safeguard Plaintiff's confidential financial information.

66.   Defendant has or should have developed internal policies, procedures, and standards, that prohibit Defendant's employees from disclosing/disseminating Plaintiff's confidential financial information.

67.   Savanna Pollard, who was employed by Defendant, continuously and systematically accessed the confidential financial information of Plaintiff without a valid reason to do so.

68.   Defendant's duties, policies, and procedures to safeguard Plaintiff's confidential financial information and to prevent its disclosure, if adhered to, would include prohibiting Defendant's employee Pollard from disclosing/disseminating Plaintiff's confidential financial information.

69.   That Defendant employer knows or has reason to know it had the ability to control Defendant employee.

70.   That Defendant employer knows or has reason to know of the necessity and opportunity to exercise such control.

71.   Defendant breached its duties by failing to properly train and/or supervise Defendant employee Pollard, and failed to properly train and/or supervise Defendant employee Pollard in their obligations not to disclose/disseminate Plaintiff's confidential financial information or access Plaintiff's confidential financial information without consent from Plaintiff or a legitimate business purpose.

72. Such negligence and negligent supervision is the proximate cause of actual and consequential damages to the Plaintiff, as further alleged in prior paragraphs herein.

73. Plaintiff is entitled to an award of actual, consequential, and punitive damages.

### FOR A SEVENTH CAUSE OF ACTION
### Breach of Contract/Breach of Implied Contract
### (Defendant JPMorgan only)

74. Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

75. That there existed a valid and enforceable contract between Plaintiffs and Defendants, wherein Plaintiff banked and held money in several accounts of Defendant, and in exchange Defendant enjoyed Plaintiff's business as a customer.

76. That in this contract, whether expressly or implied, that Defendant was to safeguard and prevent the disclosure of Plaintiffs NPI and other sensitive financial information from being disclosed to the public.

77. Defendant breached this contract by failing to present the disclosure of Plaintiffs' NPI and other financial information.

78. Defendant's breach(es) has proximately caused damage to the Plaintiff, causing damage to her reputation and character, and has caused Plaintiff to suffer humiliation, mental distress, and anxiety.
That Plaintiffs have suffered actual and consequential damages as a result of Defendant's conduct.

79. Plaintiff is entitled to an award of actual and consequential damages.

**FOR AN EIGHTH CAUSE OF ACTION**
**Violation of Section 501 and 505(b)(2) of the Gramm-Leach-Bliley Act**
**(Defendant JPMorgan only)**

80.     Plaintiff reiterates and re-alleges each and every foregoing allegation as if set forth verbatim herein.

81.     Defendant JPMorgan is a "financial institution" as defined in the Gramm-Leach-Bliley Act.

82.     As a financial institution, JPMorgan is required to safeguard customer information. Including, but not limited to, "[d]esign and implement safeguards to control the risks you identify through risk assessment, including by: (1) Implementing and periodically reviewing access controls…to: (i) Authenticate and **permit access only to authorized users to protect against the unauthorized acquisition of customer information**; and (ii) **Limit authorized users' access only to customer information that they need to perform their duties and functions**, or, in the case of customers, to access their own information;" 16 CFR 314.4(c)(1)(i-ii) (emphasis added).

83.     "Customer information" is defined as "any record containing nonpublic personal information about a customer of a financial institution, whether in paper, electronic, or other form, that is handled or maintained by or on behalf of you or your affiliates." 16 CFR 314.2(d).

84.     Defendant JPMorgan owed a duty to Plaintiffs to safeguard Plaintiffs' customer and Nonpublic information from unauthorized access.

85.     Defendant JPMorgan failed to protect against the unauthorized access to or use of Plaintiffs' customer and Nonpublic Information by allowing Defendant Pollard

13

access to Plaintiff's customer information; a customer that has no relation or business dealings with Pollard and is located several states away.

86. Said unauthorized access to Plaintiffs' information resulted in substantial harm and inconvenience to Plaintiffs.

87. Said unauthorized access is the proximate cause of Plaintiffs' harm.

88. Plaintiff is entitled to an award of actual, consequential, and punitive damages.

**WHEREFORE**, Plaintiff prays for the Court to award the Plaintiff actual, consequential, and punitive damages, as prayed for above, at law and at equity, as well as any and all other just and equitable relief as the Court finds appropriate.

                              BREWER LAW FIRM, LLC

                              */s/ Barrett R. Brewer*

                              Barrett R. Brewer, Esq. (Fed. Bar #8081)
                              P.O. Box 1847
                              510 Mill Street #2B (29464)
                              Mount Pleasant, SC 29465
                              o: (843) 779-7454
                              f: (843) 779-7456
                              e: barrett@brewerlawfirmsc.com
                              Attorney for the Plaintiff

December 4, 2025
Charleston, South Carolina